# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 8, 2011            Decided May 6, 2011

No. 10-5240

AMADOR COUNTY, CALIFORNIA,
APPELLANT

v.

KENNETH LEE SALAZAR, SECRETARY, UNITED STATES
DEPARTMENT OF THE INTERIOR, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-00658)

*Dennis J. Whittlesey* argued the cause and filed the briefs for appellant.

*Katherine W. Hazard*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief was *Kathryn E. Kovacs*, Attorney. *Susan L. Pacholski*, Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney, entered appearances.

*Mark C. Tilden* and *Padraic McCoy* were on the briefs of *amicus curiae* Buena Vista Rancheria of Me-Wuk Indians in support of appellees.

Before: SENTELLE, *Chief Judge*, TATEL, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Pursuant to the Indian Gaming Regulatory Act, the Buena Vista Rancheria of Me-Wuk Indians entered into a compact with the state of California to engage in gaming on its tribal land and then petitioned the Secretary of the Interior for approval of that compact. Under the Act, "[i]f the Secretary does not approve or disapprove a compact . . . [within] 45 days . . . the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisions of" the Act. 25 U.S.C. § 2710(d)(8)(C). In this case, the Secretary took no action within forty-five days, thus allowing the compact to become effective. Amador County, in which the Buena Vista Tribe's land is located, challenged the Secretary's "no-action" approval, claiming that the land fails to qualify as "Indian Land"—a statutory requirement for gaming. Although the district court rejected the Secretary's argument that Amador County lacked standing, it dismissed the suit, finding the Secretary's inaction unreviewable under several provisions of the Administrative Procedure Act. Amador County now appeals. We agree with the district court that the County has standing, but because we conclude that the Secretary's inaction is in fact reviewable, we reverse and remand for the district court to consider the merits in the first instance.

**I.**

Since at least 1817, the Buena Vista Rancheria of Me-Wuk Indians of California (the "Tribe") has been located in the vicinity of what is now Amador County, about forty miles southeast of Sacramento. In 1927, pursuant to a series of

appropriations bills intended to fund the purchase of land for "Indians in California now residing on reservations which do not contain land suitable for cultivations, and for Indians who are not now upon reservations in said State," the United States purchased 67.5 acres of land in the County and held it in trust for the Tribe's use. Act of June 21, 1906, ch. 3504, 34 Stat. 325, 333; Act of April 30, 1908, ch. 153, 35 Stat. 70, 76; Act of Aug. 1, 1914, ch. 222, 38 Stat. 582, 589. The current status of that land (the "Rancheria") is the central issue in this case.

In 1958, in keeping with the then-popular policy of assimilating Native Americans into American society, Congress enacted the California Rancheria Act, which authorized the Secretary to terminate the federal trust relationship with several California tribes, including the Me-Wuk Tribe, and to transfer tribal lands from federal trust ownership to individual fee ownership. Act of Aug. 18, 1958, Pub. L. No. 85-671, 72 Stat. 619. Pursuant to that statute, title to the Rancheria was transferred to two tribe members, Louis and Annie Oliver, as joint tenants. Some twenty years later, however, other members of the Tribe joined with members of sixteen other California Rancherias and filed a class action lawsuit to undo the effects of the California Rancheria Act. Specifically, they sought an injunction requiring the Secretary to " 'unterminate' each of the subject Rancherias" and to "treat all of the subject Rancherias as Indian reservations in all respects[.]" Complaint at 27, *Hardwick v. United States*, No. C-79-1710 (N.D. Cal. 1979) (quoted in Letter from Penny J. Coleman, National Indian Gaming Commission Acting General Counsel, to Judith Kammins Albietz, Tribal Attorney, at 3 (June 30, 2005) (included at J.A. 17) [hereinafter "Indian Lands Determination"] (alteration in original)).

The lawsuit ended in a settlement between the tribes and the federal government and, subsequently, in a series of

separate stipulated judgments between the individual tribes and the counties in which the tribes' land lay. In the first settlement, the Secretary agreed to restore "any of the benefits or services provided or performed by the United States for Indians because of their status as Indians" and to "recognize the Indian Tribes, Bands, Communities or groups of the seventeen rancherias . . . as Indian entities with the same status as they possessed prior to distribution of the assets of these Rancherias under the California Rancheria Act." Stipulation and Order, *Hardwick v. United States*, No. C-79-1710 (Dec. 22, 1983) (quoted in Indian Lands Determination, at 4 (included at J.A 17-18)). In the stipulated judgment between Amador County and the Tribe (the "*Hardwick* Judgment"), the parties settled a number of issues related to the levy of property taxes, and the County agreed to the following terms:

> [1] The plaintiff Rancheria and the Plaintiffs were never and are not now lawfully terminated under the California Rancheria Act . . .
> [2] The original boundaries of the plaintiff Rancheria . . . are hereby restored, and all land within these restored boundaries of the plaintiff Rancheria is declared "Indian Country."
> [3] The plaintiff Rancheria shall be treated by the County of Amador and the United States of America, as any other federally recognized Indian Reservation, and all of the laws of the United States that pertain to federally recognized Indian Tribes and Indians shall apply to the Plaintiff Rancheria and the Plaintiffs.

Stipulation for Entry of Judgment, *Hardwick v. United States*, No. C-79-1710, at 4 (Apr. 21, 1987) (included at J.A. 51).

In the late 1990s, the Tribe began planning a gaming operation and initiated the process of acquiring requisite state and federal approval pursuant to the Indian Gaming Regulatory Act (IGRA). Enacted in 1988, IGRA created a regulatory framework for tribal gaming intended to balance state, federal, and tribal interests. *See* 25 U.S.C. §§ 2701, 2702. The Act divides gaming into three classes, only one of which—Class III, which includes most casino games such as blackjack and roulette as well as slot machines—is at issue in this case. *See id.* § 2703(8). Before commencing Class III gaming, a tribe must satisfy three conditions. First, the gaming must be authorized by a tribal ordinance or resolution that has been approved by the National Indian Gaming Commission, a regulatory body created by IGRA with rulemaking and enforcement authority. *Id.* § 2710(d)(1)(A), (2)(C). Second, the Indian lands where the gaming will take place must be located within a state that permits gaming "for any purpose by any person, organization, or entity." *Id.* § 2710(d)(1)(B). And third, the gaming must be conducted in conformance with a tribal-state compact that has been approved by the Secretary. *Id.* § 2710(d)(1)(C). In addition, and critical to this case, IGRA provides for gaming only on "Indian lands." *Id.* § 2710(d)(1) ("Class III gaming activities shall be lawful *on Indian Lands . . . .*" (emphasis added)).

Once a tribe has submitted a tribal-state compact for approval, the Secretary has three choices. He may approve the compact, *id.* § 2710(d)(8)(A); he may disapprove the compact, but only if it violates IGRA or other federal law or trust obligations, *id.* § 2710(d)(8)(B); or he may choose to do nothing, in which case the compact is deemed approved after forty-five days "but only to the extent the compact is consistent with the provisions" of IGRA, *id.* § 2710(d)(8)(C). The compact takes effect once the Secretary publishes notice

of approval in the Federal Register. *Id.* § 2710(d)(8)(D), (3)(B).

In 1999, the Me-Wuk Tribe completed an initial round of negotiations with the State of California, and shortly thereafter the Secretary approved the resulting compact. In 2004, the Tribe began a second round of negotiations to amend the compact in order to provide for "expanded gaming at a prospective casino." Appellees' Br. 15. The compact amendment also expanded revenue sharing between the Tribe and the State and directed the Tribe to make arrangements with Amador County to mitigate any potential impacts on the County. When the Tribe submitted the compact amendment to the Secretary, he chose to do nothing, meaning that pursuant to subsection (d)(8)(C) the amendment was deemed approved after forty-five days. The Secretary published a notice of approval in the Federal Register on December 20, 2004. 69 Fed. Reg. 76,004.

Amador County then sued the Secretary in the United States District Court for the District of Columbia, alleging that the Rancheria fails to satisfy IGRA's "Indian lands" requirement. The County sought declaratory and injunctive relief including an order requiring the Secretary to withdraw approval and affirmatively reject the compact. Although the County also alleged that the Secretary's approval was void *ab initio* due to a technicality in California law, First Amended Complaint ¶¶ 57–60, it does not press this argument on appeal.

The Secretary moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), alleging that Amador County lacked standing, and under Rule 12(b)(6), alleging that the "claims [were] not subject to review under the Administrative Procedure Act [APA]." Although the district court found that

Amador County had standing, it dismissed the complaint, agreeing with the Secretary that the approval via inaction was unreviewable for several reasons. *Amador Cty., Cal. v. Kempthorne*, 592 F. Supp. 2d 101 (D.D.C. 2009). First, believing that the statute imposes no limit on the Secretary's authority to approve a compact and thus "lacks a standard to guide judicial review of the Secretary's decision," the court concluded that the "decision is committed to agency discretion." *Id.* at 106; 5 U.S.C. § 701(a)(1). Second, the court held that the statute precludes judicial review of approval by inaction because Congress had "limited the Secretary's approval by inaction to apply only to those portions of a compact that are lawful under the statute . . . . Thus, the Secretary's approval by inaction can never violate the statute." *Amador Cty.*, 592 F. Supp. 2d at 107; 5 U.S.C. § 701(a)(2).

Arguing that the district court erred in finding no-action approvals unreviewable, Amador County now appeals. The Secretary continues to challenge the County's standing. We review both the standing determination and the Rule 12(b)(6) dismissal *de novo*. *Affum v. United States*, 566 F.3d 1150, 1158 (D.C. Cir. 2009) ("We review *de novo* the District Court's decision on standing."); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 161–62 (D.C. Cir. 2003) ("We review the district court's dismissal for failure to state a claim under Rule 12(b)(6) *de novo*.").

## II.

We begin with the Secretary's argument that Amador County lacks constitutional standing to maintain this suit. In *Lujan v. Defenders of Wildlife*, the Supreme Court described the elements of the three-part constitutional standing test— injury in fact, causation, and redressability—and explained that to establish injury a plaintiff must demonstrate that he has

a "legally protected interest." 504 U.S. 555, 560 (1992). According to the Secretary, because Amador County agreed to the *Hardwick* Judgment, in which it promised to treat the Rancheria as Indian land, the County has no legally cognizable interest in the land being treated as anything other than that. We disagree. Amador County may well be bound by the *Hardwick* Judgment, in which case it will lose on the merits, but for the purposes of standing, "we assume the merits" in favor of the plaintiff. *Parker v. District of Columbia*, 478 F.3d 370, 377–78 (D.C. Cir. 2007) (holding that whether the plaintiff actually had a Second Amendment right to bear arms was irrelevant to whether he had standing to challenge a law impeding that right). Indeed, interpreting *Lujan*, which involved a challenge under the Endangered Species Act, we explained that the Supreme Court had considered only whether "plaintiffs had a 'cognizable interest' in observing animal species without considering whether the plaintiffs had a legal *right* to do so." *Id.* (citing *Lujan*, 502 U.S. at 562–63). Accordingly, in order to establish injury in fact, Amador County need demonstrate only that it will be injured by the planned gaming and thus has a cognizable interest in prohibiting it. To this end, the County has alleged, among other things, that the planned gaming would increase the County's infrastructure costs and impact the character of the community. First Amended Complaint ¶¶ 26–27. The district court accepted these allegations as true, as must we, *see Jenkins v. McKeithen*, 395 U.S. 411, 421–22 (1969), and the Secretary nowhere challenges them on appeal. We agree with the district court that the County's allegations are more than sufficient to establish "concrete and particularized" harm. *Lujan*, 504 U.S. at 560.

The County also easily satisfies the requirements of causation and redressability. Because the Tribe may proceed with gaming only with secretarial approval of the compact,

there is a direct causal connection between the Secretary's no-action approval and the alleged harm. The injury is also redressable because if the County succeeds on the merits and obtains a declaration that the Rancheria does not qualify as Indian land, the Secretary would have to reject the compact. *See id.* at 560–61 (describing causation and redressability requirements); *see also Patchak v. Salazar*, 632 F.3d 702, 704 (D.C. Cir. 2011) (finding all Article III standing requirements met in a challenge by a neighboring landowner to the Secretary's decision to take tribal land into trust, thereby allowing the tribe to proceed with plans to construct a gambling facility); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495–502 (7th Cir. 2005) (holding that plaintiffs, another tribe also challenging approval by inaction, had satisfied Article III standing requirements).

We next address the Secretary's argument that the County fails to satisfy the requirements of prudential standing because it falls outside "the zone of interests to be protected" by IGRA. *See Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970). Considering circumstances similar to this case, we recently reiterated in *Patchak v. Salazar* the oft-repeated rule that the zone-of-interests test is "not especially demanding." *Patchak*, 632 F.3d at 705 (internal quotation marks omitted). In that case, a neighboring private landowner argued that the Secretary's decision to take land into trust, thus making it eligible for gaming under IGRA, had violated another statute—the Indian Reorganization Act. Reasoning that because the latter statute imposes a limit on the Secretary's trust authority, we held that "[w]hen that limitation blocks Indian gaming, as [the litigant] claim[ed] it should have . . . , the interests of those in the surrounding community—or at least those who would suffer from living near a gambling operation—are arguably protected. And

because of their interests, they are proper parties to enforce the [Act's] restrictions." *Id.* at 706. So too here. Those in the surrounding community who are impacted by gambling fall within IGRA's zone of interest. Accordingly, the County, whose alleged injury flows from its proximity to the gambling operation, is "arguably protected" and is thus a proper party to enforce the limitations IGRA imposes on the Secretary.

The Secretary nonetheless insists that the concerns of the County, a political subdivision of the State, fall outside IGRA's zone of interest because the statute directly protects only states and tribes. According to the Secretary, the County's interests have been fully protected by its participation in the political process through which the compact was formed, and it would be "inconsistent with the purpose of IGRA to allow a political subdivision of the State, through an action in federal court, to invalidate the agreement negotiated by the State and Tribe." Appellees' Br. 34. The Secretary points out that in prior cases, including *Patchak*, where we have allowed community groups and neighbors to sue under IGRA, those groups were challenging the Secretary's decision to take land into trust rather than the Secretary's approval of a tribal-state compact. A suit in the latter situation is, the Secretary argues, essentially a challenge to an action of the State. Again, we disagree. In both instances, the Secretary has independent obligations imposed by federal law, and the County, just like other community groups and residents, is affected by whether or not the Secretary fulfills those obligations. For this particular purpose—enforcing the obligations of the Secretary—we see no good reason to treat Amador County differently from any other neighbor of a planned gaming facility.

## III.

Relying on three separate provisions of the APA, the Secretary contends that where a compact is deemed approved because he failed to act within the forty-five day limit, the approval is unreviewable. In particular, the Secretary relies on (1) section 701(a)(1), prohibiting review where it is otherwise barred by statute; (2) section 701(a)(2), barring review of agency actions "committed to agency discretion"; and (3) section 704, allowing review only of "agency action." We consider each argument in light of "the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). Accordingly, each category of non-reviewability must be construed narrowly. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967).

We start with the Secretary's argument that IGRA precludes judicial review because it, unlike either the "final agency action" requirement or the "committed to agency discretion" limitation, is jurisdictional. *Compare Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 353 n.4 (1984) ("[C]ongressional preclusion of judicial review is in effect jurisdictional."), *and Assoc. of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 283 F.3d 339, 341 (D.C. Cir. 2002) (treating a statutory limitation on judicial review as jurisdictional), *with Oryszak v. Sullivan*, 576 F.3d 522, 524–26 (D.C. Cir. 2009) (clarifying that the committed to agency discretion limitation and the final agency action requirement are "not . . . jurisdictional bar[s]"). To overcome the strong presumption that Congress intends agency action to be reviewable, we must find "clear and convincing evidence of a contrary legislative intent." *Bowen*, 476 U.S. at 671–72 (internal quotation marks omitted). Absent an express statutory prohibition on judicial review, courts have been extremely hesitant to find such a bar. *See id.* at 673 & n.4.

The district court concluded that subsection (d)(8)(C) precludes judicial review because it creates an alternate mechanism to ensure compliance with the law. In other words, by that provision's plain language—that compacts are deemed approved "only to the extent the compact is consistent with the provisions of [IGRA]"—only legal compact terms go into effect, meaning that, according to the district court, compacts approved by inaction must be legal. *Amador Cty.*, 592 F. Supp. 2d at 107 ("[T]he Secretary's approval of a compact by inaction can never violate the statute."). But nothing in subsection (d)(8)(C) actually creates an alternative mechanism for compliance with the law. To be sure, it provides that only lawful compacts can become effective, but someone—i.e., the courts—must decide whether those provisions are in fact lawful. *Cf. Lac Du Flambeau Band of Lake Superior Chippewa Indians*, 422 F.3d at 501 (explaining that 42 U.S.C. § 2710(d)(8)(C) only prevents "offending provisions from becoming effective in some academic sense"). Indeed, as we explain below, subsection (d)(8)(C)'s caveat invites judicial review by setting out a clear standard for reviewing courts to apply.

Having concluded that no "intent to preclude judicial review is fairly discernible in the statutory scheme," *Block*, 467 U.S. at 351 (internal quotation marks omitted), and thus that we have jurisdiction, we turn to the Secretary's argument that compact approval by inaction is unreviewable because approval is "committed to agency discretion." 5 U.S.C. § 701(a)(2). In *Citizens to Preserve Overton Park v. Volpe*, the Supreme Court explained that this is "a very narrow exception" to judicial review that should be invoked only where there is "no law to apply." 401 U.S. 402, 410 (1971). For our part, we have observed that "section 701(a)(2) encodes the principle that an agency cannot abuse its discretion, and thus violate section 706(2)(A), where its

governing statute confers such broad discretion as to essentially rule out the possibility of abuse." *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002). According to the Secretary, this is just such a case given that IGRA does not require disapproval. In support, the Secretary points out that under the statute he "*may* disapprove a compact . . . only if such compact violates—(i) any provision of this chapter, (ii) any other provision of Federal law . . . , or (iii) the trust obligations of the United States to Indians." 25 U.S.C. § 2710(d)(8)(B) (emphasis added). Because Congress used "may" instead of "shall," the Secretary argues, he is never obligated to disapprove a compact and thus approval—either affirmative approval pursuant to subsection (d)(8)(A) or, by extension, no-action approval pursuant to subsection (d)(8)(C)—falls solely within his discretion.

We rejected a similar argument in *Dickson v. Secretary of Defense*, 68 F.3d 1396 (D.C. Cir. 1995). There, we considered whether a statute directing that the Army Board for Correction of Military Records "may excuse a failure to file [if it is in] the interest of justice" committed the decision to agency discretion. *Id.* at 1399. We found it implausible that Congress intended "may" to confer such complete discretion because taking that argument to its extreme would mean that "even if the Board expressly found in a particular case that it was in 'the interest of justice' to grant a waiver, it could still decline to do so." *Id.* at 1402 & n.7 (citing two other cases in which courts, relying on statutory context, have read "may" to mean "shall"). Following this reasoning, we believe that subsection (d)(8)(B)'s use of "may" is best read to limit the circumstances in which disapproval is allowed. The Secretary must, however, disapprove a compact if it would violate any of the three limitations in that subsection, and those limitations provide the "law to apply." In any event, as the County points out, even if disapproval were otherwise

discretionary, subsection (d)(8)(A) authorizes approval only of compacts "governing gaming on *Indian lands*," suggesting that disapproval is obligatory where that particular requirement is unsatisfied.

Moreover, subsection (d)(8)(C), which governs approval by inaction, includes no exemption from this obligation to disapprove illegal compacts. Like subsection (d)(8)(B)'s list of conditions that require disapproval, subsection (d)(8)(C)'s caveat—that the compact is deemed approved "but only to the extent the compact is consistent with the provisions of [IGRA]"—provides "law to apply." And just as the Secretary has no authority to affirmatively approve a compact that violates any of subsection (d)(8)(B)'s criteria for disapproval, he may not allow a compact that violates subsection (d)(8)(C)'s caveat to go into effect by operation of law.

The Secretary nonetheless presses this argument, claiming to find support for it in subsection (d)(8)(C)'s forty-five-day time frame. That short time period, the Secretary insists, suggests that Congress was concerned that the Secretary would act too slowly, and thus "Congress's intent was not to embroil the Secretary in lengthy investigations into whether the compact violated federal law, IGRA, or trust obligations." Appellees' Br. 45. While this may be correct as to compliance with other federal law and trust obligations, the caveat demonstrates that Congress had no intention of trading compliance with IGRA's requirements for efficiency in agency proceedings.

Lastly, the Secretary claims to draw support from sections 2710(d)(7)(A) and 2714, which provide for judicial review of National Indian Gaming Commission decisions. According to the Secretary, these provisions protect his discretion by insulating his decisions from review. It is well

established, however, that the existence of a judicial review provision covering certain actions under a statute does not preclude judicial review of other actions under the same statute. *See Bennett v. Spear*, 520 U.S. 154, 175 (1997).

Moving on to the Secretary's contention that the APA's agency action requirement, 5 U.S.C. § 704, is unsatisfied here because approval came via inaction, we begin by pointing out that the APA defines "agency action" as including "failure to act." 5 U.S.C. § 551(13). Of course, as the Secretary reminds us, the Supreme Court held in *Norton v. Southern Utah Wilderness Alliance* ("*SUWA*") that inaction qualifies as "failure to act" only where it is "discrete." 542 U.S. 55, 62–64 (2004). For example, although plaintiffs may challenge an agency's failure to promulgate a rule, they may not raise a "broad programmatic attack," such as the challenge to Interior's failure to manage off-road vehicle use in federal wilderness study areas brought in *SUWA* itself. *Id.* at 63–64.

Arguing that his approval of the Me-Wuk compact through inaction fails this discreteness requirement, the Secretary relies on *Sprint Nextel Corp. v. FCC*, 508 F.3d 1129 (D.C. Cir. 2007), in which we considered the reviewability of an approval by operation of law under the Telecommunications Act of 1996. Pursuant to that Act, regulated parties may petition the FCC "to refrain—to forbear—from applying several regulatory requirements." *Id.* at 1131. The FCC may grant the petition if certain requirements are met; it may deny the petition; or, if it fails to act within a certain time period, the petition is "deemed granted." 47 U.S.C. § 160(c). In *Sprint Nextel*, the FCC failed to act in response to a forbearance petition, and we found no agency action to review because the FCC had "not engage[d] in any 'circumscribed, discrete' act." *Sprint Nextel Corp.*, 508 F.3d at 1131 (quoting *SUWA*, 542 U.S. at 62).

Although IGRA, like the Telecommunications Act, allows requests to be granted by operation of law, we see an essential difference, namely, subsection (d)(8)(C)'s caveat that compacts deemed approved through secretarial inaction become effective "only to the extent the compact is consistent with the provisions of [IGRA.]" The Telecommunications Act contains no parallel provision. In other words, in enacting the Telecommunications Act, Congress provided that if the FCC failed to act, a forbearance request would be granted by operation of law without limitation. By contrast, in enacting subsection (d)(8)(C), Congress limited the extent to which a compact could be approved by operation of law, thus imposing an obligation on the Secretary to affirmatively disapprove any compact exceeding that limit. Accordingly, where, as here, the plaintiff challenges a compact on the grounds that it conflicts with another provision of IGRA, we have a discrete agency inaction to review—the Secretary's failure to disapprove the compact despite its inconsistency with the Act.

*Sprint Nextel* is distinguishable for another reason. In that case, we emphasized that "in administrative law, we do not sustain a right-result, wrong-reason decision of an agency," and, therefore, we need "more than a result; we need the agency's reasoning for that result." 508 F.3d at 1132–33 (internal quotation marks and alterations omitted). Because the FCC commissioners had dead-locked, none of their statements constituted the agency's reasoning for taking no action on the forbearance request. Accordingly, unable to determine if the outcome was justified, we declined to review it. *Id.* In this case, however, Amador County alleges not that the Secretary's decision was unreasoned but that his decision was "contrary to law." Appellant's Reply Br. 18. Because of the nature of this particular challenge, we need no agency reasoning. Either the compact meets the requirements of

IGRA, in which case we must reject the challenge, or it does not, in which case we must direct the Secretary to disapprove the compact.

Finally, relying again on *SUWA*, in which, in addition to imposing a discreteness requirement, the Supreme Court held that courts may compel agency action only where that action was "legally *required*," the Secretary argues that his inaction is unreviewable because action (either by approving or by disapproving the compact) "is not demanded by law." *SUWA*, 542 U.S. at 63–65. According to the County, whether or not the Secretary had an obligation to act is irrelevant because the Supreme Court drew this requirement from 5 U.S.C. § 706(1) (allowing courts to "compel agency action unlawfully withheld or unreasonably delayed"), not from the provision at issue in this case, 5 U.S.C. § 706(2)(A) (allowing courts to "hold unlawful . . . agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Because we have already found this second *SUWA* requirement satisfied in this case, *see supra* 12–14 (holding that IGRA imposes duty to disapprove where subsection (d)(8)(C)'s caveat is violated), we need not consider whether the obligatory action requirement relates only to section 706(1).

To sum up, then, we hold that where, as here, a plaintiff alleges that a compact violates IGRA, thus requiring the Secretary to disapprove the compact, nothing in the APA precludes judicial review of a subsection (d)(8)(C) no-action approval.

## IV.

Having found that Amador County has standing and that the Secretary's approval by inaction is reviewable, we turn to the merits. The parties agree both that the sole question at

issue is whether the Rancheria qualifies as "Indian land" and that, if it does, the Secretary had authority to approve the compact. IGRA defines "Indian land" as

> [1] all lands within the limits of any Indian reservation; and
> [2] any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703(4). As to subparagraph 2, nothing in either the record or the briefs forecloses the possibility that the land is held subject to restrictions on alienation, nor do we do so here. But because the parties agree that the Rancheria is owned in fee by the Tribe rather than held in trust by the United States, it appears that the land can qualify as "Indian land" only if it is an "Indian Reservation"—a question that turns, and again the parties agree about this, on the effect the *Hardwick* Judgment had on the California Rancheria Act.

As noted above, although the California Rancheria Act stripped the land of its reservation status, the County agreed in the *Hardwick* Judgment that the "plaintiff Rancheria and the Plaintiffs were never and are not now lawfully terminated under the California Rancheria Act," that the "original boundaries of the plaintiff Rancheria . . . are hereby restored," that all the land within these restored boundaries of the plaintiff Rancheria is declared "Indian Country," that the "plaintiff Rancheria shall be treated by the County of Amador and the United States of America, as any other federally recognized Indian Reservation, and [that] all of the laws of the United States that pertain to federally recognized Indian

Tribes and Indians shall apply to the Plaintiff Rancheria and the Plaintiffs." Stipulation for Entry of Judgment, *Hardwick v. United States*, No. C-79-1710, at 4 (Apr. 21, 1987) (included at J.A. 51). These provisions, the Secretary argues, preclusively establish that the Rancheria qualifies as "Indian land." Disagreeing, the County contends that these sweeping provisions must "be construed and interpreted in light of the issue[] being litigated"—"the County's ability to assess property taxes on the former Rancheria lands." Appellant's Reply Br. 8, 16. The *Hardwick* Judgment, the County insists, is therefore "of no consequence in the context of this litigation challenging the Secretary's approval of the [compact]." *Id.* at 8–9.

Generally, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action . . . whether on the same or a different claim." Restatement (Second) of Judgments § 27; *see also Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). Here, of course, we have a stipulated judgment, and issues dealt with in such judgments are not "actually litigated" for the purpose of issue preclusion. *Otherson v. Dep't of Justice, INS*, 711 F.2d 267, 274 (D.C. Cir. 1983). Nonetheless, "[p]reclusion is appropriate when the stipulation clearly manifests the parties' intent to be bound in future actions." *Id.* at 274 n.6; *see also* Restatement (Second) of Judgments § 27, cmt. e; Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4443, n.36 (citing numerous cases supporting this proposition). Accordingly, "the scope of preclusion by settlement arises from contract," and we "measur[e] intent by ordinary contract principles." Wright & Miller, *Federal Practice & Procedure* § 4443, n.21; *see also Otherson*, 711 F.2d at 274 n.6.

Having dispensed with this case on APA grounds, the district court never considered the scope of the County's intent to be bound by the *Hardwick* Judgment. Because intent is a question of fact that may turn not only on the language of the agreement, but also on extrinsic evidence not yet in the record, we shall, as the parties request, remand to give the district court an opportunity to assess the merits in the first instance.

## V.

For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*