AMADOR COUNTY, California, Plaintiff,

v.

Sally JEWELL, et al., Defendants.

Civil Action No. 05–658 (BJR)

United States District Court,
District of Columbia.

Signed June 4, 2013

Dennis Jeffrey Whittlesey, Dickinson Wright PLLC, Washington, DC, Scott Raymond Knapp, Dickinson Wright P.L.L.C., Lansing, MI, for Plaintiff.

Judith Rabinowitz, U.S. Department of Justice, San Francisco, CA, for Defendants.

### MEMORANDUM OPINION AND ORDER

BARBARA J. ROTHSTEIN, UNITED STATES DISTRICT JUDGE

Plaintiff Amador County, California ("the County") brings claims against the United States Department of the Interior ("DOI"), DOI Secretary Sally Jewell, and Assistant Secretary for Indian Affairs Kevin Washburn [1] (collectively, "the Secretary"), challenging under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*, the Secretary's approval of an amendment to a gaming compact between the Buena Vista Rancheria of Me–Wuk Indians (the "Tribe" [2]) and the State of California. The Tribe now seeks to intervene for the limited purpose of moving to dismiss the amended complaint under Federal Rule of Civil Procedure 19. Amador County opposes intervention, arguing that the motion to intervene is untimely and that the United States adequately represents the Tribe's interests. Because the Tribe was aware of its asserted impairment-of-interests as early as 2005, the motion will be denied.

### I. BACKGROUND

The D.C. Circuit opinion reversing and remanding this matter for further proceedings describes the facts relevant here. *See Amador Cnty., Cal. v. Salazar,* 640 F.3d 373, 375–77 (D.C.Cir.2011). The IGRA, which "created a [tripartite] regulatory framework for tribal gaming" conducted on "Indian lands," classifies most casino games and slot machines as "Class III" gaming. *Id.* at 376–77; *see also* 25 U.S.C. §§ 2702, 2703. Relevant here, the IGRA provides that Class III gaming "must be conducted in conformance with a tribal-state compact that has been approved by the Secretary." *Amador Cnty.,* 640 F.3d at 376 (citing 25 U.S.C. § 2710(d)(1)(C)). The Secretary may disapprove a tribal-state compact "only if it violates IGRA or other federal law or trust obligations," *id.* at 377 (citing 25 U.S.C. § 2710(d)(8)(B)), and a compact is "deemed automatically approved" to the extent it complies with IGRA if the Secretary fails to act on it within forty-five days, *id.* (citing 25 U.S.C. § 2710(d)(8)(C)).

The Secretary approved a Class III gaming compact between the Tribe and the State

---

1. Sally Jewell and Kevin Washburn are substituted as Defendants under Fed. R. Civ. P. 25(d)(1).

2. The government lists the Tribe as one of many "Indian Entities Recognized and Eligible to Re-

ceive Services from the United States Bureau of Indian Affairs." 75 Fed.Reg. 60810 (Oct. 1, 2010).

of California on May 15, 2000. *See* First Am. Compl. (Dkt.# 30) ¶ 17. A few years later, the Tribe and the State negotiated a new compact, which "expanded the scope of [the Tribe's] Class III gaming" but "geographically limited [it] to the Buena Vista Rancheria"—the tract of land the Tribe occupies in Amador County. *Id.* ¶ 18. "When the Tribe submitted the compact amendment to the Secretary, he chose to do nothing, meaning that [under IGRA] subsection (d)(8)(C) the amendment was deemed approved after forty-five days." *Amador Cnty.*, 640 F.3d at 377. The Secretary subsequently published a notice of approval. *Id.*

The County filed this action in 2005, challenging the Secretary's approval of the amended compact on the ground that the Rancheria does not qualify as "Indian land" under the IGRA. *See generally* Compl. (Dkt # 1). In August of that year, after Defendants moved for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Tribe sought leave to file an *amicus* brief addressing the failure to join indispensable parties under Federal Rule of Civil Procedure 19. *See* Tribe's Mot. for Leave to File an *Amicus* Br. (Dkt.# 18) at 2; Tribe's Proposed *Amicus* Br. (Dkt.# 18–2) at 16–17. The Tribe argued that the parties' failure to join it "and the State of California, as the parties to the gaming Compact and Amendment thereto ..., serv[ed] as a separate and additional ground for dismiss[al]." Tribe's Mot. for Leave to File an *Amicus* Br. at 2. The Tribe added that "[t]he presence of the United States in this case does not fully protect the Tribe's interests ... [because] the United States does not face the same ... harm as does the Tribe if [the County] is granted the relief it requests." Tribe's Proposed *Amicus* Br. at 13. The County opposed the Tribe's motion, arguing in relevant part that the United States could adequately represent the Tribe's interests because "no conflict [of interest] exists between the United States and the [Tribe]." Pls.' Opp. to Tribe's Mot. for Leave to File an *Amicus* Br.

(Dkt.# 19) at 4 (quoting *Ramah Navajo School Board, Inc. v. Babbitt*, 87 F.3d 1338, 1351 (D.C.Cir.1996)). Judge Richard W. Roberts ultimately denied the Tribe's motion for leave to file the brief.

The case then proceeded without the Tribe. The County filed an amended complaint in 2008, and Judge Roberts granted Defendants' motion to dismiss for failure to state a claim in 2009. *See Amador Cnty. v. Kempthorne*, 592 F.Supp.2d 101 (D.D.C. 2009). In May 2011, the D.C. Circuit reversed and remanded for consideration of the merits. *See Amador Cnty.*, 640 F.3d 373. In November 2011, the Tribe brought this motion seeking leave to intervene for the limited purpose of filing a motion to dismiss for failure to join the Tribe and State of California as required parties under Rule 19. *See* Tribe's Mot. to Interv. (Dkt.# 59) at 1. Echoing several of the arguments set forth in its proposed *amicus* brief, the Tribe states that it "has an obvious interest in ... defending the validity of its Compact Amendment," in protecting its gaming rights and revenues under the IGRA, and in the status of the Rancheria as "Indian lands." *Id.* at 8. The Tribe also seeks to protect and assert "its sovereign immunity from suit and its sovereign right to govern and develop the Rancheria." *Id.* at 7.

The County opposes intervention as untimely, emphasizing that "the Tribe had knowledge of the instant litigation from the outset" but did not seek to intervene during the "six and a half years" since the original complaint was filed on April 1, 2005.[3] Pl.'s Opp. (Dkt.# 61) at 2, 7. The County adds that "[n]o change has occurred ... with respect to the Tribe's interests in this case or the United States' representation of the Tribe's position such that the Tribe's lengthy delay would be now warranted." *Id.* at 7. Accordingly, the County counsels against further delaying a case which "is otherwise ready for oral argument and decision on the merits." Joint Status Report (Dkt.# 60) at

---

**3.** The parties dispute the length of the pendency of this suit. The County argues that timeliness should be measured from the date the original complaint was filed since the amended complaint requests "exactly the same" relief. Pls.' Opp. at 5. The Tribe counters that the clock should run from the filing of the amended complaint on March 21, 2008. *See, e.g.*, Tribe's Reply (Dkt.# 63) at 5.

2; *see also* Pls.' Opp. at 7–8. In addition, the County argues that the United States' interests are aligned with the Tribe's because "both the Secretary and the Tribe seek the same result: an upholding of the Secretary's 'no-action approval' of the compact amendment permitting the development of a casino." Pls.' Opp. at 10.

The Tribe maintains that its motion to intervene is timely because "this litigation remains at the early stages" in light of the D.C. Circuit's remand. Tribe's Reply at 2, 4–5. It adds that it "has only recently become aware that the United States may no longer adequately represent its interests." *Id.* at 8. This argument relies in large part upon the Eastern District of California's recent decision in *Friends of Amador Cnty. v. Salazar,* No. Civ. 2:10–348 WBS CKD, 2011 WL 4709883 (E.D.Cal. Oct. 4, 2011), a similar matter involving the Tribe, the Amended Compact, the Secretary, and many of the same claims.[4]

## II. DISCUSSION

■ Rule 24 of the Federal Rules of Civil Procedure provides two avenues for parties to intervene in ongoing lawsuits: (1) intervention of right under Rule 24(a), and (2) permissive intervention under Rule 24(b). The Tribe primarily invokes Rule 24(a), arguing that the Court must permit its intervention because it satisfies the "four requirements for intervention [as of right] under Rule 24(a)(2): (1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties." *Smoke v. Norton,* 252 F.3d 468, 470 (D.C.Cir.2001) (quoting *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.,* 840 F.2d 72, 74 (D.C.Cir.1988)) (internal quotations mark omitted) (alteration in original). A prospective intervenor also "must

demonstrate that it has standing under Article III of the Constitution." *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 732 (D.C.Cir.2003); *see also Deutsche Bank Nat. Trust Co. v. F.D.I.C.,* 717 F.3d 189, 192 (D.C.Cir.2013) (clarifying that this requirement extends to *defendant*-intervenors). Article III's standing requirements include "(1) injury-in-fact, (2) causation, and (3) redressability." *Id.* at 732–33 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

■ The County does not dispute the Tribe's standing, and the Court agrees that the Tribe has demonstrated an "injury in fact" that is "fairly ... trace[able] to the challenged action" and that would be "redressed by a favorable decision." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. A judgment favoring the County would vacate the Secretary's approval of the Amended Compact, strip the Rancheria of its designation as "Indian lands," and thereby enjoin the Tribe from engaging in Class III gaming activities. These legally cognizable injuries to the Tribe's financial and sovereign interests trace directly to the County's initiation of this action and would be redressed by the action's dismissal.

Because the Tribe has demonstrated Article III standing, it also has "demonstrate[d] the existence of a legally protected interest for purposes of Rule 24(a)." *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1076 (D.C.Cir.1998). Indeed, the County disputes neither that the Tribe has a cognizable interest in this litigation nor that such interests would be impaired in the event of an adverse ruling. Accordingly, whether intervention is warranted turns on the remaining two Rule 24(a) factors: the timeliness of the Tribe's motion and the degree to which its interests already are adequately represented.

---

4. In *Friends of Amador Cnty.,* the Tribe made a "special appearance as a non-party to present a [Rule 19] motion" for dismissal. *Friends of Amador Cnty.,* 2011 WL 4709883 at *1. Citing a 2010 hearing in that matter, the Tribe argued that statements made by counsel for the United States—the same counsel of record in the present action—indicated that the United States would not adequately protect the Tribe's interests if doing so "might conflict with [the United States's] national Indian (or Indian litigation)

policy." (Tribe's Mot. to Dismiss in *Friends of Amador Cnty.* (Dkt.# 32) at 25.) In the wake of the Eastern District of California's dismissal of *Friends of Amador Cnty.,* the Tribe argues here that "a conflict between the United States and the Tribe" has emerged, since "the United States [has] proven itself inadequate to represent the Tribe's interests" regarding similar challenges to the Amended Compact. Tribe's Reply at 8 (citing *Friends of Amador Cnty.,* 2011 WL 4709883, at *4).

▆ Filing a "timely application" is a "prerequisite to any claim for intervention under Rule 24." *Hodgson v. United Mine Works. of Am.,* 473 F.2d 118 (D.C.Cir.1972). "[T]imeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. British Am. Tobacco Australia Servs., Ltd.,* 437 F.3d 1235, 1238 (D.C.Cir. 2006) (quoting *United States v. AT & T,* 642 F.2d 1285, 1295 (D.C.Cir.1980)). The time elapsed is "measured from when the prospective intervenor 'knew or should have known that any of its rights would be directly affected by the litigation.'" *Roeder v. Islamic Republic of Iran,* 333 F.3d 228, 233 (D.C.Cir. 2003) (quoting *Nat'l Wildlife Fed'n v. Burford,* 878 F.2d 422, 433–34 (D.C.Cir.1989), rev'd on other grounds sub nom. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).[5]

▆ The Tribe argues that its motion to intervene is timely for several reasons. First, it suggests that rather than "adher[ing] formulaically to Rule 24," the timeliness analysis "must account heavily" for the fact that intervention is sought for the limited purpose of moving to dismiss the matter under Rule 19. Tribe's Reply at 3. However, the Tribe cites no authority for the proposition that special consideration is warranted where intervention is sought for the purpose of filing a Rule 19 motion. While a Rule 19(b) motion to dismiss may be raised by the existing parties as late as a trial on

the merits, *see* Fed.R.Civ.P. 12(h)(2), there is no indication that non-parties should be afforded similar deference in a timeliness analysis under Rule 24.

The Tribe also contends that "[t]his litigation remains in the early stages," having "essentially just been restarted" in June 2011 following the D.C. Circuit's remand. Tribe's Mot. at 7. Thus, it adds, intervention will neither prejudice the parties nor cause "meaningful delay." Tribe's Reply at 5. But Defendants' motion to dismiss, which was filed in 2008 and still is pending on the merits, involves the same parties and issues now as it did before the remand. And because the parties have represented that "this case is otherwise ready for ... decision," Joint Status Report at 2, the Tribe's intervention will further delay resolution of the merits to the detriment of the existing parties.[6]

Additionally, although "the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness," *Hodgson,* 473 F.2d at 129, the Tribe could and should have moved for intervention several years ago. It first raised the Rule 19 argument in a proposed *amicus* brief it filed in 2005, and neither the Court nor the existing parties "should be hindered by [the Tribe's] delay" in seeking to reassert that ground for dismissal. *British Am. Tobacco,* 437 F.3d at 1239.

Finally, the Tribe states that its motion to intervene is timely in light of recent events "that plainly evidence the federal Defendant's material conflicts and actual inadequacy in representing" the interests of the Tribe. Tribe's Reply at 14. It asserts that "the circumstances of the suit have recently

---

5. The D.C. Circuit has held that "a post-judgment motion to intervene in order to prosecute an appeal [was] timely" even where the movant previously had recognized that its rights would be affected by the litigation "because 'the potential inadequacy of representation came into existence only at the appellate stage.'" *Smoke,* 252 F.3d at 471 (quoting *Dimond v. D.C.,* 792 F.2d 179, 193 (D.C.Cir.1986)). Whether timeliness should be measured from a prospective intervenor's awareness that disposition of a case may affect the intervenor's rights, or from the time it was aware that its rights and interests may no longer be adequately represented, the Tribe's motion is untimely. As this opinion goes on to

explain, the Tribe has known both that its rights would be directly affected and that there was a question as to whether the United States adequately represented the Tribe's interests from the outset of this litigation.

6. The Tribe also claims that its "rights as a sovereign not to have its interests adjudicated in its absence trumps" any prejudice its intervention may cause. Tribe's Reply at 4, 16–17. The Tribe's sovereign interest is a significant factor, but it is not dispositive and does not serve as a "trump" for the timeliness inquiry.

changed," pointing to the D.C. Circuit's decision in this case and the Eastern District of California's decision in *Friends of Amador Cnty.* as newfound evidence of the United States's inadequate representation of the Tribe's interests. *Id.* at 7–8. Moreover, the Tribe urges that "the crucial date" in determining timeliness is when the prospective intervenor "became aware [that] its interests might no longer be adequately represented by" an existing party. *Id.* at 6.

The record flatly contradicts the Tribe's argument that it only recently learned of the supposed conflict of interest. In its proposed *amicus* brief, the Tribe noted that "[t]he presence of the United States in this case does not fully protect the Tribe's interests." Tribe's Proposed Amicus Br. at 13. The Tribe does not argue, and the docket does not reflect, any subsequent change in the Tribe's views on this matter. The decisions by the D.C. Circuit Court and the Eastern District of California may serve to support and heighten the Tribe's concerns, but they raise nothing new; rather, they simply support what the Tribe clearly recognized from the outset. *See Creusere v. Bd. of Educ.,* 88 Fed.Appx. 813, 825 (6th Cir.2003) (reasoning that "although [a party's] interest [was] heightened because of [a] state court's ruling, its interest was not new"). The Tribe's proposed motion for dismissal under Rule 19 merely repeats earlier arguments it advanced in 2005.

For these reasons, the Tribe was in a position to challenge the County's claims at the outset of this litigation in 2005 and could have sought intervention well before now. *See British Am. Tobacco,* 437 F.3d at 1239 (emphasizing that proposed intervenor had been aware of grounds for intervention "well before it filed its motion").[7] The Tribe's motion to intervene therefore is untimely and fails to satisfy the threshold requirement for intervention as of right under Rule 24(a). *See British Am. Tobacco,* 437 F.3d at 1239 ("Courts reach the other elements of Rule

24(a) only after the threshold question of timeliness" has been satisfied.). Although the Tribe argues in the alternative that it should be permitted to intervene under Rule 24(b), *see* Tribe's Mot. at 13, its failure to file a timely application likewise bars permissive intervention. "Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' " *See NAACP v. New York,* 413 U.S. 345, 365, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). If, as here, an application is untimely, that is the end of the story. *See id.*

### III. CONCLUSION

The Tribe's motion to intervene is untimely and, therefore, fails to satisfy a threshold requirement for intervention under Rule 24. Accordingly, it is hereby

ORDERED that the Tribe's motion to intervene be, and hereby is, DENIED.

---

7. In its August 2011 motion to dismiss in *Friends of Amador Cnty.,* the Tribe argued that the United States's statements in a hearing from October 12, 2010, clearly demonstrated a conflict between the interests of the United States and those of the Tribe. *See* Tribe's Mot. to Dismiss in *Friends of Amador Cnty.* at 23. But even if these statements did constitute new evidence of a conflict of interest, the Tribe offers no justification for its delay in filing the present motion after learning of this supposed conflict in 2010.