# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 14, 2013          Decided June 18, 2013

No. 12-5294

DELTA AIR LINES, INC.,
APPELLANT

v.

EXPORT-IMPORT BANK OF THE UNITED STATES, ET AL.,
APPELLEES

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,
INTERVENOR-APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-02024)

———

*Michael K. Kellogg* argued the cause for appellants. With him on the briefs were *Wan J. Kim*, *Gregory G. Rapawy*, *W. Joss Nichols*, *Jonathan A. Cohen*, *R. Russell Bailey*, and *Stephen B. Moldof*.

*Mark B. Stern*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, *Beth S. Brinkmann*, Deputy Assistant Attorney General, *Helen L. Gilbert*, Attorney, and *Sparkle L. Sooknanan*, Attorney.

*Steven G. Bradbury*, *C.B. Buente*, and *Quentin Riegel* were on the brief for *amicus curiae* National Association of Manufacturers in support of appellees.

Before: HENDERSON, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: The Export-Import Bank of the United States is a federal agency that issues loans and loan guarantees to foreign corporations so that they can purchase American goods and services. In 2011, the Export-Import Bank approved $3.4 billion in loan guarantees to Air India so that Air India could purchase Boeing airplanes. Air India plans to use the planes to provide air service on transoceanic routes. Before issuing the loan guarantees, the Bank was required under the Export-Import Bank Act to consider the effects that the loan guarantees would have on U.S. industries and U.S. jobs. *See* 12 U.S.C. §§ 635(b)(1)(B), 635a-2. Delta Air Lines argues that the Bank failed to consider those effects, in violation of the Bank Act. At this stage, we conclude simply that the Bank failed to reasonably explain its application of the Bank Act in this case, as required by the Administrative Procedure Act. We therefore reverse the judgment of the District Court. The District Court is directed to remand the case to the Bank without vacating any of the Bank's actions in this matter to date.

I

The Export-Import Bank Act establishes the Export-Import Bank of the United States and authorizes the Bank to provide loans and loan guarantees that allow foreign

companies to purchase American goods and services. The Bank Act also contains numerous provisions that limit the Bank's authority to extend loans and loan guarantees to foreign corporations. Two such provisions are directly relevant in this case. Section 635(b)(1)(B) of Title 12 provides that the Bank "shall take into account any serious adverse effect" of a loan or loan guarantee on certain U.S. industries and U.S. jobs. 12 U.S.C. § 635(b)(1)(B). Similarly, Section 635a-2 provides that the Bank "shall implement such regulations and procedures as may be appropriate to insure that full consideration is given to the extent to which any loan or financial guarantee is likely to have an adverse effect" on U.S. industries and U.S. jobs. 12 U.S.C. § 635a-2.[1]

To comply with the Bank Act, the Bank has developed a set of Economic Impact Procedures. Those procedures are designed to identify categories of loans and loan guarantees that do not have an adverse effect on the relevant portions of

---

[1]In relevant part, Section 635(b)(1)(B) provides that the Bank:
> shall take into account any serious adverse effect of such loan or guarantee on the competitive position of United States industry, the availability of materials which are in short supply in the United States, and employment in the United States, and shall give particular emphasis to the objective of strengthening the competitive position of United States exporters and thereby of expanding total United States exports.

In relevant part, Section 635a-2 provides that the Bank:
> shall implement such regulations and procedures as may be appropriate to insure that full consideration is given to the extent to which any loan or financial guarantee is likely to have an adverse effect on industries, including agriculture, and employment in the United States, either by reducing demand for goods produced in the United States or by increasing imports to the United States.

the U.S. economy. Such loans and loan guarantees are thus effectively screened out from more detailed economic analysis during the consideration of particular loans or loan guarantees. As relevant here, the Economic Impact Procedures screen out transactions that do not "result in the foreign production of an exportable good." J.A. 1129. In other words, loans and loan guarantees that help foreign *service* providers (such as Air India's airline service) have been categorically determined not to affect U.S. industries and U.S. jobs.

Here, the Bank applied those procedures to Air India's loan guarantees. Because Air India planned to use the loan guarantees to increase the number of transoceanic flights it offered – a service, not an exportable good – the Bank did not specifically consider the impact of the loan guarantees on U.S. industries and U.S. jobs. Delta argues that this approach is inconsistent with the Bank Act, which according to Delta requires consideration of the impact of individual loans and loan guarantees – including to foreign *service* providers – on U.S. industries and U.S jobs. The District Court agreed with the Bank, and Delta now appeals.

II

The Bank's initial defense to Delta's challenge is that its implementation of these provisions of the Bank Act is committed to its discretion by law and is therefore judicially unreviewable under the Administrative Procedure Act. *See* 5 U.S.C. § 701(a)(2). The District Court concluded otherwise. We agree with the District Court.

Agency action, the Supreme Court has said, is presumptively subject to judicial review. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967) (APA

"embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute'") (citation omitted). The APA contains two exceptions: Review is unavailable when (i) it is precluded by statute or (ii) when agency action is committed to agency discretion by law. *See* 5 U.S.C. § 701(a)(1)-(2).

The Bank primarily argues that the second exception applies here. Under that exception, agency action is committed to agency discretion by law and thus judicially unreviewable when there is "no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (exception "applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply") (internal quotation marks omitted).

Section 635(b)(1)(B) mandates that the Bank "*shall* take into account any serious adverse effect" a guarantee might have on certain U.S. industries or U.S. jobs. *See* 12 U.S.C. § 635(b)(1)(B) (emphasis added). Similarly, Section 635a-2 mandates that the Bank "*shall* implement such regulations and procedures as may be appropriate to insure that full consideration is given to the extent to which any loan or financial guarantee is likely to have an adverse effect" on U.S. industries and U.S. jobs. *Id.* § 635a-2 (emphasis added). The language in both provisions identifies factors that the Bank must consider – namely, the adverse effects on U.S. industries and U.S. jobs. Ensuring that agencies follow commands of this sort is of course standard judicial fare. These statutes provide enough law to qualify as "law to apply" under the relevant APA precedents. *See Amador County v. Salazar*, 640 F.3d 373, 381 (D.C. Cir. 2011) (review available because statute imposes mandatory obligations on agency); *Armstrong v. Bush*, 924 F.2d 282, 293 (D.C. Cir. 1991) (same); *Robbins*

*v. Reagan*, 780 F.2d 37, 45 (D.C. Cir. 1985) (per curiam) ("The mere fact that a statute grants broad discretion to an agency does not render the agency's decisions completely nonreviewable under the 'committed to agency discretion by law' exception unless the statutory scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised."); *see also* 3 RICHARD J. PIERCE, JR. ADMINISTRATIVE LAW TREATISE § 17.6 (4th ed. 2002) ("statute can confer on an agency a high degree of discretion, and yet a court might still have an obligation to review the agency's exercise of its discretion to avoid abuse," especially on procedural grounds).

The Bank also suggests, in passing, that the Bank Act implicitly precludes judicial review, the first Section 701(a) exception to judicial review. In support, the Bank says that it is designed to function like a commercial bank, not a federal agency. But the Bank is indisputably a federal agency. 12 U.S.C. § 635(a)(1) ("There is created a corporation with the name Export-Import Bank of the United States, which shall be an agency of the United States of America."). The Bank further contends that judicial review would undermine its ability to operate effectively. No doubt many agencies feel that way at times, but an agency that wants a carve-out from the APA should direct its arguments to Congress. The Bank Act does not preclude judicial review for purposes of Section 701(a)(1).

In sum, the Bank's actions in this case are subject to judicial review to determine whether the Bank complied with the Bank Act or otherwise acted in an arbitrary and capricious manner. *See* 5 U.S.C. § 706.

III

Delta argues that the Bank, by not performing a detailed economic analysis of the loan guarantees, failed to "take into account any serious adverse effect" of its loan guarantees and failed to give "full consideration" to whether the loan guarantees were likely to have the relevant adverse economic harm. *See* 12 U.S.C. §§ 635(b)(1)(B), 635a-2.[2] The Bank actually shares Delta's view that the statute requires consideration of those factors for *all* loans and loan guarantees. But the Bank says that its Economic Impact Procedures do just that because they expressly state that they are designed to "ensure that all transactions are screened for economic impact implications." J.A. 1129.

The dispute here arises because the procedures *categorically* determine that loans and loan guarantees to foreign *service* providers will not affect U.S. industries and U.S. jobs. Delta acknowledges that categorical assessments are permissible under the Act in appropriate circumstances. Tr. of Oral Arg. at 5. The real disagreement between the parties, then, is whether the Bank's categorical assessment of the impact of loans and loan guarantees to foreign service providers is a reasonable application of the Bank Act and has been reasonably explained for purposes of the Administrative Procedure Act. *See Motor Vehicle Manufacturers Assn. v. State Farm Mutual Auto. Insurance Co.*, 463 U.S. 29, 57 (1983); 5 U.S.C. § 706(2)(A). We agree with Delta that the

---

[2] Delta also argues that the Bank violated a provision of the Bank Act that prohibits the Bank from making a loan or loan guarantee that helps a foreign country expand production capacity of a competing "commodity" by one percent or more. *See* 12 U.S.C. § 635(e). But the ordinary meaning of the word "commodity" encompasses goods, not services, and so that provision does not apply here.

Bank, at a minimum, has not reasonably explained its justification for the categorical conclusion at issue here. In particular, the Bank has not reasonably explained its apparent conclusion that loans and loan guarantees to help a foreign company provide a service (as opposed to a good) can *never* cause adverse effects to U.S. industries and U.S. jobs.

We need not prolong the matter. Applying this Court's precedents regarding remand without vacatur, we direct the District Court to remand the case to the Bank without vacating any of the Bank's actions in this matter to date. *See Allied-Signal, Inc. v. Nuclear Regulatory Commission*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (vacatur not required if "it is conceivable" that agency may correct error and vacatur would be too disruptive). On remand to the Bank, the Bank should (i) attempt to provide a reasonable explanation for how the Economic Impact Procedures, which screen out loans and loan guarantees to service providers, square with the statute's requirements, or (ii) adequately consider and explain any adverse effects that these particular Air India loan guarantees have on U.S. industries and U.S. jobs, or (iii) take whatever other action the Bank deems appropriate to comply with the Bank Act and the APA. The Bank's actions on remand of course will be subject to later judicial review if an aggrieved party wishes to challenge the Bank's actions as unlawful.

\* \* \*

We reverse the judgment of the District Court. The District Court is directed to remand the case to the Bank for further proceedings consistent with this opinion, but the District Court should not vacate any of the Bank's actions in this matter to date.

*So ordered.*