# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 15, 2014      Decided December 2, 2014

No. 14-1018

PETER SIRIS,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

---

On Petition for Review of an Order of
the Securities & Exchange Commission

---

*M. William Munno* argued the cause and filed the briefs for petitioner.

*Jacob R. Loshin*, Senior Counsel, Securities and Exchange Commission, argued the cause for respondent. With him on the brief were *Michael A. Conley*, Deputy General Counsel, *John W. Avery*, Deputy Solicitor, and *Randall W. Quinn*, Assistant General Counsel.

Before: ROGERS and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Securities and Exchange

Commission filed a civil complaint against Peter Siris, alleging he committed various securities law violations. Voluntarily settling the suit, Siris agreed in a consent judgment that in any related administrative proceeding before the Commission he would not contest the allegations of the civil complaint. Thereafter, the Commission commenced a follow-on proceeding against Siris to determine whether a remedial sanction was in the public interest and ordered that Siris be permanently barred from the securities industry and from participating in any offering of penny stock.

In *Blinder, Robinson & Co. v. SEC*, 837 F.2d 1099 (D.C. Cir. 1988), the court emphasized that, in a follow-on sanctions proceeding, the Commission must abide by a "clear distinction" between the district court's determination of a petitioner's liability under the securities laws and evidence about the circumstances surrounding his misconduct "germane to the [Commission] in exercising its judgment as to the nature and scope of sanctions that are appropriate in the public interest." *Id*. at 1109. As regards the appropriate sanction, the court instructed that "evidence relevant to a party's *degree* of culpability must be considered in deciding that issue." *Id.* But the court explained that it was "in no way" suggesting that the petitioner could, in a follow-on sanctions proceeding, relitigate the factual issues "conclusively decided" in the underlying civil suit. *Id.*

Siris seeks vacatur of the Commission's order imposing a lifetime bar on the ground that the Commission contravened the court's instruction in *Blinder* by refusing to consider the entire record and mitigating evidence he proffered regarding the appropriate sanction. Review of the administrative record indicates that Siris sought, in effect, "to relitigate the factual question[s]," *id.*, that he agreed in the consent judgment not to challenge directly or indirectly. Although the factual allegations

in the complaint against Siris were not adjudicated after an evidentiary hearing, the terms of the consent judgment rendered those facts "conclusively decided," *id.*, for purposes of the subsequent administrative proceeding. The Commission considered the relevant record, including Siris' evidence of the circumstances surrounding his misconduct that did not, in effect, seek to challenge the allegations of the complaint. For these reasons, and consistent with the deference due to the Commission's choice of sanction, we deny the petition for review.

**I.**

Peter Siris founded and was a managing member of Guerilla Capital Management, LLC, an investment adviser to two funds Siris established that invest in Chinese companies listed on U.S. stock exchanges. Siris also founded Hua Mei 21st Century, LLC, a consulting firm. On July 30, 2012, the Securities and Exchange Commission ("Commission") filed a civil complaint against Siris, Guerilla, and Hua Mei in federal district court, alleging that they repeatedly engaged in insider trading and other securities-related misconduct. Many of the allegations involved Siris' relationship with China Yingxia International, Inc. ("China Yingxia"), a health food company with operations in China. The complaint alleged:

• Siris sold China Yingxia stock in violation of the holding period, registration, and other requirements for stock resale set forth in Section 5 of the Securities Act, 15 U.S.C. §§ 77e(a), (c). Compl. ¶¶ 32-47.

• Siris acted as an unregistered broker in violation of Section 15(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78*o*(a)(1), by "raising over $2 million worth of investments [for China Yingxia] in exchange for transaction-based

compensation." Compl. ¶ 49.

• In February and March 2009 Siris "with scienter," Compl. ¶¶ 140, 144, repeatedly engaged in insider trading in China Yingxia stock, in violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b5-1, promulgated thereunder. Compl. ¶¶ 73, 78-87, 90. During two episodes, Siris traded China Yingxia stock after receiving from China Yingxia a letter and draft press release containing material, nonpublic information about the company. Compl. ¶¶ 78-82, 83-87. Siris knew he was not permitted to trade the stock while in possession of such information. Compl. ¶ 74.

• Siris made misrepresentations and omitted material information in communications with his funds' investors in violation of Section 206(4) of the Investment Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)-8, promulgated thereunder. Compl. ¶¶ 6, 92-100. Siris' communications about problems at China Yingxia omitted mention of Siris' own role in the company's failings, and "gave the false and misleading impression that others should be sued for the very conduct in which Siris himself engaged." Compl. ¶ 99.

• Between July 2009 and December 2010 Siris engaged in extensive insider trading in connection with ten confidential securities offerings. Compl. ¶¶ 7, 101-27. In advance of each offering, Siris or his firm was confidentially solicited by a broker-dealer and given access to material, nonpublic information after agreeing not to trade the security while in possession of the information. Compl. ¶ 104. Siris then sold or sold short the issuers' securities prior to the public announcement of the offerings, thus profiting from the securities' decline in value upon announcement. Compl. ¶¶ 7,

101-27. With respect to at least one of the ten offerings, Siris also knowingly or recklessly made a materially false representation in a securities purchase agreement. Compl. ¶¶ 8, 128-33, 139.

• Siris violated Rule 105 of Regulation M, 17 C.F.R. § 242.105, by making short sales during the five business days before pricing in two securities offerings in which he participated. Compl. ¶¶ 9, 134-37.

The district court entered a final judgment permanently enjoining Siris from violating the aforementioned securities laws and ordering him to pay disgorgement and a civil penalty. *SEC v. Siris, et al.*, No. 12 Civ. 5810 (S.D.N.Y. Sept. 18, 2012). Siris, who was represented by counsel, consented to entry of the final judgment, signing the judgment and acknowledging his signature before a notary public. Although the consent judgment recited that Siris did not admit or deny the allegations of the complaint (except as to the district court's jurisdiction), he agreed that "in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, [he] underst[oo]d that [he] shall not be permitted to contest the factual allegations of the complaint." Consent J. ¶ 9. Siris also agreed "not to take any action . . . denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." *Id.* ¶ 10.

Ten days later, the Commission commenced an administrative proceeding against Siris to determine whether a remedial sanction was necessary to protect the public interest. *See* 15 U.S.C. § 78*o*(b)(6)(A); *id.* § 80b-3(f). Siris filed an answer setting forth his defenses and attached an affidavit explaining corrective actions he had taken to prevent his committing further securities violations. An administrative law judge ("ALJ"), noting that "[a]ll material facts that concern the

activities for which Siris was enjoined were decided against him in the civil case on which this proceeding is based," and taking as true "[a]ny other facts in [Siris'] pleadings" that did not attempt to relitigate facts established in the civil case, granted the Enforcement Division's motion for summary disposition and permanently barred Siris from the securities industry and from participating in any offering of penny stock. *See In re Peter Siris*, SEC Rel. No. 477, 2012 WL 6738469, at \*1, \*5 (ALJ Dec. 31, 2012).

Siris petitioned the Commission for review on the ground that the ALJ erred by ignoring his proffered evidence about the circumstances surrounding his alleged misconduct as well as corrective efforts he had taken to prevent future violations.

The Commission denied Siris' petition. Because it was undisputed that, at the time of Siris' alleged misconduct, he was participating in an offer of penny stock (China Yingxia) and was associated with an investment adviser (Guerilla Capital), the threshold statutory requirements for the imposition of remedial sanctions were satisfied. *See* 15 U.S.C. §§ 78*o*(b)(6)(A), 80b-3(f). The Commission was thus left to consider "whether, and to what extent, sanctions [we]re in the public interest." *In re Peter Siris*, SEC Rel. No. 71068, 2013 WL 6528874, at \*5 (Dec. 12, 2013). The Commission reiterated its "well-established" policy that a respondent in a follow-on administrative proceeding "may put forward mitigating evidence concerning the circumstances surrounding his underlying misconduct," but emphasized that, where, as here, Siris consented to an injunction, he could not contest the complaint's allegations. *Id.* at \*8. In accord with that policy, the Commission rejected most of Siris' arguments on the ground that they contradicted the complaint.

Considering the entire relevant record and applying the

multifactor test set forth in *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979), *aff'd on other grounds*, 450 U.S. 91 (1981), the Commission concluded that an industry-wide bar was in the public interest. The Commission explained that Siris' conduct "included numerous instances of insider trading over the course of almost two years" and "securities fraud through material misrepresentations," and "resulted in ill-gotten gains of over half-a-million dollars." *In re Peter Siris*, 2013 WL 6528874, at *6. Moreover, in light of Siris' multiple insider trading violations and the fact that he knew he could not trade while in possession of material, nonpublic information, Siris' misconduct was undertaken with *scienter*.

The Commission acknowledged the steps Siris had taken to avoid future misconduct, such as ceasing to participate in offerings, establishing trading compliance protocols, appointing a chief compliance officer, and maintaining a list of restricted securities. *Id.* But the Commission concluded that such voluntary measures would not adequately guard against future violations, and that "accepting the sincerity of Siris's assurances against future misconduct does not mean," as he suggested, "that 'there [was] no risk of future misconduct warranting a bar.'" *Id.* The Commission likewise rejected Siris' proposal that he be subjected to sanctions short of industry-wide debarment – namely, that he continue to refrain from participating in offerings, accepting consulting assignments, or acting in certain capacities – noting "the practical difficulties in enforcing compliance with such a proposal," *id.* at *6 n.43 (internal quotation marks omitted), and emphasizing "the nature of [Siris'] misconduct and the opportunity that continued participation in the industry would present for future violations," *id.* In particular, Siris' agreeing not to serve as a portfolio manager or investment adviser to a managed account "does not ensure the protection of investors, because the allegations supporting the injunction involve a broad array of misconduct

not unique to service [in those positions]." *Id.* at *7 (internal quotation marks omitted). The Commission also highlighted "[t]he flagrant manner in which Siris . . . violated the terms of his consent [judgment]," which gave the Commission "pause about relying upon his assurances against future misconduct, even accepting them as sincere." *Id.* In addition, the Commission made clear its view that, given Siris' continued argument that his conduct did not in fact amount to violations of the securities laws, Siris had not meaningfully recognized the wrongful nature of his conduct. *Id.* Siris petitions for review.

## II.

Siris contends that the Commission "erred as a matter of law, acted arbitrarily and capriciously, and grossly abused its discretion" by "failing to consider the *entire* record" and by "asserting that Siris was precluded by the consent judgment from asking the Commission to weigh the *entire* record in determining whether a bar was necessary to protect the public interest." Pet'r's Br. 45 (emphases in original). In his view, a lifetime bar was unnecessary to protect the public interest in light of his corrective efforts and demonstrated willingness to accept more modest remedial sanctions.

The court has jurisdiction over Siris' petition under Section 25(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78y(a)(1), and Section 213(a) of the Investment Advisers Act, *id.* § 80b-13(a). Pursuant to that authority, the court may "affirm or modify and enforce or . . . set aside the [Commission's] order in whole or in part." 15 U.S.C. § 78y(a)(3); *accord id.* § 80b-13(a). In reviewing the Commission's decision imposing on Siris an industry-wide lifetime bar, the court's review is limited to determining whether the sanction was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *KPMG, LLP v. SEC*, 289 F.3d 109, 121

(D.C. Cir. 2002) (quoting 5 U.S.C. § 706(2)(A)).  Further, "[t]he Supreme Court has long instructed that the Commission's choice of sanction shall not be disturbed by the court unless the sanction is either 'unwarranted in law or is without justification in fact.'"  *Id.* (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112-13 (1946)).  Our review is deferential:  "'It is a fundamental principle . . . that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy the relation of remedy to policy is peculiarly a matter for administrative competence.'"  *Kornman v. SEC*, 592 F.3d 173, 186 (D.C. Cir. 2010) (quoting *Am. Power & Light*, 329 U.S. at 112).  "Because of the Commission's 'accumulated experience and knowledge[,] . . . [i]ts judgment is entitled to the greatest weight.'"  *Id.* (alterations in original) (quoting *Am. Power & Light*, 329 U.S. at 112).

Granting due deference to the Commission's choice of sanction, we conclude that the Commission did not abuse its discretion in imposing on Siris a lifetime bar.  The Commission justifiably rebuffed Siris' proffered evidence contradicting the allegations of the complaint, which he voluntarily agreed not to contest.  The Commission gave sufficient attention to any mitigating evidence.  Siris has not shown that the Commission's imposition of a lifetime bar was unwarranted as a matter of law or unjustified in fact.

**A.**

In an administrative proceeding following an injunctive action, the petitioner may not relitigate those factual questions conclusively decided in the underlying civil suit, but the Commission must consider mitigating evidence proffered by the petitioner about the circumstances surrounding his misconduct.  *Blinder*, 837 F.2d at 1109-10; *see also Kornman*, 592 F.3d at 187-88.  Our opinion in *Blinder*, 837 F.2d 1099, illustrates how

the Commission should apply this principle. In that case, the district court in a civil suit rejected the petitioner's argument that, in undertaking a course of alleged misconduct, he had relied in good faith on counsel's advice; the court thus found that he violated various securities laws. *Id.* at 1109. This court held that the petitioner was entitled, in the Commission's follow-on administrative proceeding, to proffer mitigating evidence, such as why he rejected counsel's advice, which attorney's advice he rejected, and whether the advice he received was absolute or equivocal. *Id.* at 1110. But the court emphasized that it was "in no way suggesting" that the petitioner was free to contend that he had relied on counsel, because the district court, in the underlying proceeding, had found to the contrary. *Id.* at 1109.

The Commission was entitled to rely on the allegations of the complaint in deciding whether or not imposition of a lifetime bar on Siris was in the public interest. A consent judgment is a judgment of the court, "a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992). By virtue of the consent judgment, Siris was ordered "not . . . to contest the factual allegations of the complaint" in "any disciplinary proceeding before the Commission based on the entry of the injunction in this action." Consent J. ¶ 9. The consent judgment stated he "underst[oo]d" that bar, *id.*, but even if he did not, it is still enforceable as part of the judgment. Likewise, Siris was ordered "not to take any action . . . denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." *Id.* ¶ 10. Whether or not issues established in the consent judgment were "actually litigated" for purposes of estoppel, the Commission's application of factual preclusion in the follow-on proceeding was appropriate because the judgment unambiguously barred Siris from making any future challenge

to the allegations in the complaint. *See Amador Cnty. v. Salazar*, 640 F.3d 373, 384 (D.C. Cir. 2011); *see also SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 295 (2d Cir. 2014); *Elliott v. SEC*, 36 F.3d 86, 87 (11th Cir. 1994) (per curiam).

It was also permissible for the Commission to reject Siris' purported mitigation evidence that, in reality, constituted a collateral attack on the consent judgment. *Kornman*, 592 F.3d at 186-87; *Blinder*, 837 F.2d at 1109-10. For instance, the Commission could properly refuse to credit Siris' assertions that he did not make trades based on any information in a letter and draft press release he received from China Yingxia, and that the correspondence did not disclose material, nonpublic information, because those assertions directly contradict allegations in the complaint. *See* Compl. ¶¶ 4, 73, 80-81, 83, 87. Siris also maintains that the Commission "made improper credibility determinations and discounted [his mitigating] evidence from the record as 'self-serving.'" Pet'r's Br. 48 (quoting *In re Peter Siris*, 2013 WL 6528874, at *9 n.60). But the evidence the Commission described as "self-serving" was proffered by Siris to show that he did not commit insider trading with *scienter* or possess material, nonpublic information. As such, that evidence constituted an impermissible collateral attack on the consent judgment, and the Commission could properly refuse to consider it.

**B.**

The Commission likewise did not abuse its discretion in concluding that a lifetime bar was necessary to protect the public interest. *See* 15 U.S.C. § 78*o*(b)(6)(A); *id.* § 80b-3(f). Taken together, the complaint's allegations and the record evidence that does not conflict with the consent judgment make clear that the Commission's choice of sanction was well within its broad discretion. *See Kornman*, 592 F.3d at 186.

As a preliminary matter, Siris maintains that the Commission automatically imposed a lifetime bar in light of his settlement of the injunctive action. But the Commission expressly confirmed that "it is not [the Commission's] view that [Siris'] consenting to an antifraud injunction in the district court automatically means a bar is appropriate." *In re Peter Siris*, 2013 WL 6528874, at *11 n.71 (internal quotation marks omitted). Rather, the Commission considered the entire relevant record, addressed Siris' arguments against the lifetime bar, and cogently applied *Steadman*'s multifactor test, 603 F.2d at 1140. *See PAZ Secs., Inc. v. SEC*, 566 F.3d 1172, 1175 (D.C. Cir. 2009).

As the Commission explained, Siris' conduct was egregious and recurrent, not isolated. *See Steadman*, 603 F.2d at 1140-41. Siris maintains that "none of [his] trades remotely resembled insider trading that merits a lifetime bar" and that he "did not seek inside information and did nothing to obtain material nonpublic information." Pet'r's Br. 56. Insofar as Siris sought to collaterally attack the consent judgment, essentially taking issue with the allegations he was ordered not to challenge, the Commission was justified in refusing to consider Siris' contention. To the extent Siris is arguing that his actions were not egregious, in light of the serious and repeated wrongdoings set forth in the complaint, the Commission did not abuse its discretion in rejecting that argument.

Siris further maintains that the Commission ignored the purportedly mitigating evidence that the resignation of China Yingxia directors, which was made public before the offering of China Yingxia stock, also impacted China Yingxia's stock price. Even assuming these facts are true, Siris does not assert that he actually decided to trade based on this public information instead of his insider knowledge, which might be relevant to his "*degree* of culpability." *Blinder*, 837 F.2d at 1109. Rather,

Siris' suggestion that the Commission should have considered the public information's impact on share price contradicts the complaint's allegation that all of his ill-gotten gains from the sale of China Yingxia shares were caused by his trading in nonpublic information. Compl. ¶¶ 82, 89, 91. Moreover, even if Siris had traded based on the public information his culpability would be only minimally diminished because he still violated the securities laws, *see* 17 C.F.R. § 240.10b5-1, and he knew that he was not permitted to trade while in possession of material, nonpublic information, Compl. ¶ 74. Likewise, even if Siris is correct that his funds invested only a small portion of their money in China Yingxia and that he disclosed information about China Yingxia's problems to his investors, the Commission explained that those facts do not negate Siris' culpability, particularly because he "failed to reveal his own role in China Yingxia and 'gave the false and misleading impression that others should be sued for the very conduct in which Siris himself engaged.'" *In re Peter Siris*, 2013 WL 6528874, at *9 n.59 (quoting Compl. ¶ 99).

The record also supports the Commission's conclusion that Siris' misconduct involved *scienter*. The complaint alleged that many of Siris' violations were intentional or reckless, he repeatedly violated the securities laws, and he knew he could not trade while in possession of material, nonpublic information about an offering. *See* Compl. ¶¶ 127, 133, 139-40, 144. With respect to those violations that did not require *scienter*, Siris' conduct was replete with fraud and deception. *See, e.g.*, Compl. ¶¶ 40-41, 60-62. Likewise, the Commission justifiably concluded that Siris had not meaningfully recognized the wrongful nature of his conduct. The Commission observed, for instance, that Siris continued to contest the factual bases for the securities law violations alleged in the complaint, with "flagrant" disregard for the consent judgment. *In re Peter Siris*, 2013 WL 6528874, at *7. The Commission also acknowledged

the steps Siris had taken to avoid future wrongdoing, but in its judgment determined that if Siris were permitted to return to the securities industry, there still would be a meaningful risk that he would commit future violations, given the nature of his misconduct and his ongoing attempts to contest the facts set forth in the complaint. *Id.* at \*6-7.

Siris nonetheless faults the Commission for rejecting his offer to voluntarily submit to certain lesser sanctions. Because permanent debarment "is not the only remedy at the Commission's disposal that acts as a deterrent," the Fifth Circuit Court of Appeals concluded in *Steadman* that "[t]he Commission should articulate why a lesser sanction would not sufficiently discourage others from engaging in the unlawful conduct it seeks to avoid." 603 F.2d at 1142. This Court, however, has "quoted *Steadman* only for the well-established rule that an agency must adequately explain its decisions," and has not required the Commission to analyze all potential alternative sanctions. *PAZ Secs.*, 566 F.3d at 1176; *see also Kornman*, 592 F.3d at 188. As discussed, the Commission gave adequate reasons for concluding that Siris' permanent and industry-wide debarment was in the public interest, and the Commission did not abuse its discretion in refusing Siris' offer to submit to various alternative sanctions.

Accordingly, we deny the petition for review.